UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Penny Lou S.,

     Plaintiff,

     v.                                         Civil Action No. 2:18–cv–213

Commissioner of Social Security,

     Defendant.

## OPINION AND ORDER
(Docs. 8, 9)

Plaintiff Penny Lou S. brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the second decision of the

Commissioner of Social Security denying her applications for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI).  Pending before the Court

are Plaintiff's motion to reverse the Commissioner's decision (Doc. 8), and the

Commissioner's motion to affirm the same (Doc. 9).  For the reasons stated below,

Plaintiff's motion is GRANTED, in part; the Commissioner's motion is DENIED; and

the matter is REMANDED for further proceedings and a new decision.

## Background

Plaintiff was 44 years old on her alleged disability onset date of September 28,

2013.  She has a high school education and worked as a housekeeper or housekeeper

supervisor for approximately 25 years, until she stopped working in early 2012 due to

several physical impairments, described below.  (AR 164, 300, 491, 519, 521.)

Plaintiff is single and has two adult children. (AR 518.) During the alleged disability period, she lived with a friend, and received food stamps from the government and health insurance through Medicaid. (AR 519, 998.)

Plaintiff is obese and suffers from fibromyalgia;[1] sleep problems; and daily pain in her right shoulder, neck, back, hips, knees, elbows, wrists, and hands. (AR 42, 162–63, 368–70, 494, 497–502, 1265.) She is limited in her ability to walk, stand, lift, and bend, among other things. (AR 42, 269–70, 504–06.) On a typical day, Plaintiff cares for her dogs, helps clean the house including doing the dishes, prepares meals, and naps. (AR 270–71, 503.) On bad days, she can do hardly anything because of fatigue, pain (especially in her elbows and knees), and swelling in her feet. (AR 504–05.)

On April 14, 2014, Plaintiff filed applications for DIB and SSI. Pursuant to those applications, Plaintiff alleges that, starting on September 28, 2013, she has been unable to work due to bursitis and arthritis in her hips, fibromyalgia, and back pain.[2] (AR 20, 40, 100, 253, 461.) Plaintiff's applications were denied initially and upon reconsideration, and Administrative Law Judge (ALJ) Thomas Merrill

---

[1] "Fibromyalgia" is defined as "[a] common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances." *Stedman's Medical Dictionary* 725 (28th ed. 2006). There are no laboratory tests for the presence or severity of fibromyalgia, and "[t]he principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

[2] On May 7, 2012, Plaintiff filed prior applications for DIB and SSI, alleging disability beginning on March 21, 2012 due to bursitis in her hips, back pain, fibromyalgia, sleep problems, and obesity. (AR 65, 68, 70.) Those claims were denied pursuant to an ALJ decision dated September 27, 2013. (AR 65–74.)

conducted an administrative hearing on November 4, 2015. (AR 37–61.) Plaintiff testified and was represented by an attorney. A vocational expert (VE) also testified at the hearing. On January 12, 2016, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act at any time from her alleged disability onset date through the date of the decision. (AR 20–31.) Thereafter, the Appeals Council denied Plaintiff's request for review. On October 26, 2017, however, upon consideration of the Commissioner's assented-to motion to remand, the District Court remanded the matter for further proceedings under sentence four of 42 U.S.C. § 405(g). (AR 633–34.) On February 20, 2018, the Appeals Council issued an Order directing the ALJ to reconsider certain particular issues on remand, including Plaintiff's fibromyalgia, the relevant medical source opinions, Plaintiff's residual functional capacity, and Plaintiff's past relevant work.[3] (AR 638–40.)

ALJ Merrill conducted the second administrative hearing on August 1, 2018. (AR 488–513.) Plaintiff again testified, and was represented by an attorney; a VE also testified. On August 22, 2018, the ALJ issued his second decision on the claim, again finding that Plaintiff was not disabled at any time from her alleged disability onset date through the date of the decision. (AR 461–78.) Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–4.) Having exhausted her administrative remedies, Plaintiff filed the Complaint in this action on December 7, 2018. (Doc. 3.)

---

[3] In the Order, the Appeals Council noted that Plaintiff had filed new applications for DIB and SSI on September 20, 2016. (AR 640.) The Council directed the ALJ to consolidate those applications with the applications currently under review. (*Id.*)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited

burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, in his August 2018 decision, ALJ Merrill first determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of September 28, 2013. (AR 464.) At step two, the ALJ found that Plaintiff had the severe impairments of osteoarthritis of the right shoulder status post arthroplasty, obesity, and left hip trochanteric bursitis. (*Id.*) Conversely, the ALJ found that Plaintiff's type 2 diabetes and degenerative disc disease were non-severe. (AR 466–67.) In addition, the ALJ analyzed Plaintiff's fibromyalgia and concluded that it was "not medically determined." (AR 464.) The ALJ then made the alternative finding that, even if Plaintiff's fibromyalgia was found to be medically determined, it "would be non-severe," as "[t]he condition does not more than minimally affect [Plaintiff's] ability to function."[4] (AR 466.) At step

---

[4] Of note, in his earlier decision from January 2016, the ALJ similarly found that Plaintiff's fibromyalgia was "not severe"; however, in contrast to his most recent (August 2018) decision, the ALJ appears to have found in the 2016 decision that Plaintiff's fibromyalgia *was* a "medically determinable impairment." (AR 24.) Specifically, after discussing Plaintiff's fibromyalgia, along with several other of Plaintiff's impairments, the ALJ states in the 2016 decision: "*all of [Plaintiff's] medically determinable impairments* were taken into consideration along with [her] 'severe' impairments in finding the [RFC] as discussed below." (*Id.* (emphasis added).) Taken in context, it can be presumed that the ALJ was referring to Plaintiff's fibromyalgia as one of those "medically determinable impairments" that was considered in his RFC determination, given that it was discussed in some detail just prior to that statement. This difference in the ALJ's 2016 and 2018 decisions is significant because, as discussed below, Plaintiff argues that the ALJ violated the mandate rule or law of the case doctrine by changing the 2016 finding that Plaintiff's fibromyalgia was a medically determinable impairment to the 2018 finding that it was not a medically determinable impairment.

three, the ALJ found that none of Plaintiff's impairments, alone or in combination,

met or medically equaled a listed impairment.  (AR 468–69.)

Next, the ALJ determined that Plaintiff had the RFC to perform "light work,"

as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

> [Plaintiff] can lift twenty pounds occasionally and ten pounds frequently. [She] can stand and walk for six hours and sit for six hours in an eight-hour workday.  [She] can frequently push and pull with her right upper extremity.  [She] can balance on an unlimited basis[;] occasionally climb ramps, stairs, ladders, ropes, and scaffolds[;] and occasionally stoop, kneel, crouch, and crawl.  [She] can frequently reach with her right upper extremity.

(AR 469.)  Given this RFC, based on testimony from the VE, the ALJ found that

Plaintiff was able to perform her past relevant work as a housekeeping supervisor

and a housekeeper.  (AR 477–78.)  The ALJ concluded that Plaintiff had not been

under a disability from her alleged disability onset date of September 28, 2013

through the date of the decision.  (AR 478.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  A person will be found disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff contends the ALJ made the following four errors: (1) he violated the mandate rule and/or law of the case doctrine by finding that Plaintiff's fibromyalgia was not a medically determinable impairment; (2) he erroneously found that Plaintiff's fibromyalgia was neither a medically determinable nor a severe impairment at step two, despite substantial evidence to the contrary; (3) he improperly analyzed the medical source opinions; and (4) he mistakenly found that

Plaintiff had the RFC to perform light work, despite substantial evidence to the contrary. (*See* Docs. 8, 10.) As discussed below, the Court finds no violation of the mandate rule or law of the case doctrine but finds that the ALJ erred in determining that Plaintiff's fibromyalgia was not a medically determinable impairment. Given this error, the claim must be remanded for further proceedings and a new decision.

## I.     The ALJ did not violate the mandate rule or the law of the case doctrine.

Plaintiff argues that the ALJ violated the mandate rule by finding in his latest decision that Plaintiff's fibromyalgia is not a medically determinable impairment, despite finding the opposite in his earlier (2016) decision, and despite the Appeals Council's instruction that the ALJ "evaluate the *severity* of [Plaintiff's] fibromyalgia" (AR 639 (emphasis added)). (*See* Doc. 8 at 4–5.) According to Plaintiff, on remand, the ALJ was not allowed to revisit the finding that Plaintiff's fibromyalgia was a medically determinable impairment, but rather, should have considered only the finding that Plaintiff's fibromyalgia was non-severe. As explained below, the Court is not persuaded by Plaintiff's argument.

It is well settled that an ALJ's failure to follow a court's remand order is reversible error, *see Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); *Carrillo v. Heckler*, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984); and that an ALJ's failure to follow an order of the Appeals Council is also reversible error, *see* 20 C.F.R. § 404.977(b) ("The [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional

action that is not inconsistent with the Appeals Council's remand order."); *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009) ("[An] ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand."). Two legal doctrines require ALJs to follow remand orders of the court and the Appeals Council: (1) the doctrine of the law of the case, under which "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case," *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993); *see Brachtel v. Apfel*, 132 F.3d 417, 419–20 (8th Cir. 1997); and (2) the rule of mandate, which requires that "on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision," *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005) (emphasis omitted); *see Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014).

Here, the ALJ did not violate either the mandate rule or the law of the case doctrine. The October 2017 Order of this Court broadly directs the ALJ to "further evaluate" Plaintiff's impairments at step two of the sequential analysis, reassess Plaintiff's RFC, and incorporate into the record evidence from Plaintiff's prior disability claim. (AR 634.) The February 2018 Appeals Council Order is more specific, stating as follows, in relevant part:

> The [January 2016 ALJ] decision indicates [that Plaintiff's] fibromyalgia is a non-severe impairment because other causes have not been ruled out. . . . [T]he record contains several diagnoses for fibromyalgia, including an assessment by the state agency medical consultant that [Plaintiff] was physically limited by . . . fibromyalgia. Of note, while the [September 2013 ALJ] decision . . . did not find [Plaintiff's] fibromyalgia to be severe,

it did find that it was a medically determinable impairment. Therefore, upon remand, an updated consultative examination to test the 18 tender points may be warranted.

(AR 638 (citations omitted).) The Appeals Council ordered that, on remand, the ALJ "will: *[f]urther evaluate the severity of [Plaintiff's] fibromyalgia*[,] . . . includ[ing] consideration of the medical evidence associated with [Plaintiff's] prior claims." (AR 639 (emphasis added).) In his August 2018 decision, the ALJ did just that: further evaluate the severity of Plaintiff's fibromyalgia, considering the relevant medical evidence. (AR 464–66.)

Plaintiff cites to *Ayer v. Commissioner of Social Security*, Case No. 5:15-CV-15, 2016 WL 11580280 (D. Vt. May 11, 2016), in support of her claim that the ALJ violated the mandate rule by failing to follow the instructions contained in the Appeals Council Order. But the case is distinguishable. In *Ayer*, two initial ALJ decisions found that the plaintiff had multiple severe impairments; but then in the third, most recent decision, the ALJ found that those same impairments were non-severe. *Id.* at *5. The court held that the ALJ erred in reconsidering the step-two severity assessments on remand from the Appeals Council, where the Appeals Council had implicitly affirmed those favorable determinations, in part because the plaintiff did not (and could not) challenge them. *Id.* at *6 (citing *Calderon v. Astrue*, 683 F. Supp. 2d 273, 276–77 (E.D.N.Y. 2010) ("[A] district court is never called upon to address issues resolved in the claimant's favor; the claimant obviously cannot challenge such determinations, and the Commissioner cannot challenge them because they were made by him (or his delegate) in the first place.")). The court explained:

> [T]he language in the remand order is unambiguous. It was not an invitation to reconsider the prior favorable findings. It was a directive to consider whether there were any other impairments that also rose to the level of "severe." It was error for the ALJ to interpret the remand order differently.

*Id.* at \*6–7. In contrast, the Appeals Council's Order at issue here does not require (either explicitly or implicitly) that any previous step-two assessment of Plaintiff's fibromyalgia remain. Rather, the Order broadly invites the ALJ to "[f]urther evaluate the severity of [Plaintiff's] fibromyalgia." (AR 639.) The Court finds that it would push the bounds of the mandate rule and the law of the case doctrine too far to hold that this statement required the ALJ to presume Plaintiff's fibromyalgia was a medically determinable impairment without reconsidering that issue as part of his evaluation of Plaintiff's fibromyalgia. Therefore, there was no violation of the mandate rule or the law of the case doctrine.

## II.    The ALJ erred in finding that Plaintiff's fibromyalgia was not a medically determinable impairment.

Of course, resolving the issue of whether the ALJ was required to adopt a finding that Plaintiff's fibromyalgia was a medically determinable impairment pursuant to the mandate rule or the law of the case doctrine, does not answer the more critical question of whether substantial evidence demonstrates that Plaintiff's fibromyalgia did in fact rise to the level of a medically determinable impairment during the alleged disability period. Plaintiff argues that the ALJ erred in finding Plaintiff's fibromyalgia to be both non-severe and not a medically determinable impairment, and that substantial evidence does not support excluding fibromyalgia as a severe impairment. (Doc. 8 at 5–9.) Upon consideration of the record, the Court

finds that the ALJ erred in finding that Plaintiff's fibromyalgia was not a medically determinable impairment. This error requires remand for further proceedings starting at step two of the sequential evaluation.

The question of whether and which of a claimant's impairments are "medically determinable" must be answered at the start of the ALJ's sequential evaluation, given that, in order to be found disabled, a claimant must show that she is unable to perform any substantial gainful activity by reason of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see* 42 U.S.C. § 423(d)(1)(A). Only impairments that are "medically determinable" may be considered in the disability analysis. In order to qualify as a medically determinable impairment, an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. An impairment must be established by:

> objective medical evidence from an acceptable medical source that shows [the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant] [is] disabled.

20 C.F.R. § 404.1529(a).

Social Security Ruling (SSR) 12-2p "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically

determinable impairment . . . of fibromyalgia . . . , and how [the Commissioner] evaluate[s] [fibromyalgia] in disability claims and continuing disability reviews under . . . the Social Security Act." SSR 12-2p, 2012 WL 3104869, at *1 (SSA July 25, 2012). Under SSR 12-2p, an ALJ will find fibromyalgia to be a medically determinable impairment if the claimant has: (1) "[a] history of widespread pain," that is, pain in all quadrants of the body that has persisted for at least three months"; (2) at least 11 "positive tender points on physical examination," found bilaterally and both above and below the waist; and (3) "[e]vidence that other disorders that could cause the symptoms . . . were excluded." *Id.* at 2–3.

Here, applying SSR 12-2p to Plaintiff's claim, the ALJ found that Plaintiff's fibromyalgia was not a medically determinable impairment primarily because her longstanding treating rheumatologist, Narandra Kiran Bethina, MD, and other treating providers did not exclude other impairments or disorders that could also have caused Plaintiff's reported symptoms; and because the record does not include evidence of physical examinations performed by treating providers that demonstrate evidence of fibromyalgia, including 11 positive tender points. (AR 464–66.) This analysis is not supported by substantial evidence.

For example, in July 2013, Dr. Bethina stated in a treatment note that Plaintiff "has clinical manifestations to suggest the early stages of fibromyalgia and this in turn could be triggered by her chronic neck, back[,] and left hip pain[,] and her disturbed sleep cycles." (AR 1267.) A few months later, in October 2013, Dr. Bethina diagnosed fibromyalgia, chronic hip pain, and back pain; and noted that Plaintiff had generalized aches and disturbed sleep, along with "[s]ignificant tenderness" in the

paracervical muscular region, "[t]enderness" at the midthoracic area, and

"[t]enderness" around her lateral hip and the inner aspects of her knees bilaterally.

(AR 340–41.) In May 2014, Dr. Bethina recorded as follows in a treatment note:

- Plaintiff has "incre[a]sed muscle/joint pain" and "neck pain that is causing headaches," and "continues to have persistent generalized aches." Her "sleep continues to be disturbed." (AR 385.)

- Plaintiff has "[s]ignificant tenderness in the cervical region and muscle spasms present in the thoracolumbar region," and "[t]enderness is present at the midthoracic area." (AR 386–87.)

- "Tenderness is present around [Plaintiff's] lateral hip and the tender spots on the inner aspects of her knees bilaterally." (AR 387.)

- "Few symmetrical tender points are present." (*Id.*)

- "[Plaintiff's] fibromyalgia continues to be active at this time." (*Id.*)

In October 2015, family medicine physician Dr. Gary Waring—who had

treated Plaintiff for 28 years—opined that, since September 2013, Plaintiff could

stand/walk for only two hours in an eight-hour workday, could lift/carry no more than

ten pounds for 1/3 of the day or five pounds for 2/3 of the day, could reach or pull for

less than 1/3 of the workday, could never push, and would be expected to miss two

days of work per month due to her fibromyalgia and fatigue. (AR 1185–87.) In

January 2016, Dr. Bethina noted that Plaintiff had "[m]inimal paraspinal tenderness

diffusely" and "[t]enderness . . . at [the] bilateral greater trochanteric regions[,]

significantly worse on [the] right side." (AR 1098, 1099.) In November 2016, after

recording that Plaintiff had point tenderness in the neck (anteriorly and posteriorly),

lower and upper back (bilaterally), and knees; consultative examiner Dr. Fred

Rossman assessed Plaintiff as having low back pain, fibromyalgia, right shoulder

pain, and diabetes. (AR 1000–02.) He stated that Plaintiff "continues to have pain as well as [having] been diagnosed [with] fibromyalgia causing . . . pain throughout her body. *She has 18/18 fibromyalgia points*." (AR 1002 (emphasis added).)

In May 2017, family medicine physician Dr. Delores Burroughs-Biron stated in a treatment note that Plaintiff "[h]as fibromyalgia," along with "muscle aches and fatigue." (AR 1146, 1149.) In February 2018, Dr. Bethina recorded in a treatment note that Plaintiff's fibromyalgia "[a]ppears to be active and is caus[ing] her generalized aches." (AR 1077.) In March 2018, Sheldon Ravin, DO, stated in a treatment note that Plaintiff's "working diagnosis with Dr. Waring . . . [is] fibromyalgia," and that "[t]rigger points" were noted in the thoracolumbar area. (AR 1178, 1179.) In May 2018, Dr. Bethina noted that Plaintiff had "[t]enderness" over her left lateral hip region and also in the gluteal muscle region, and "[m]inimal tenderness" and "restriction of range of motion" in other areas including her right shoulder. (AR 1172.)

This evidence, taken together, is inconsistent with the ALJ's finding that Plaintiff's fibromyalgia did not rise to the level of a medically determinable impairment. *See John v. Berryhill*, No. 1:17-CV-00963 (JJM), 2019 WL 2314620, at *2 (W.D.N.Y. May 31, 2019) (holding that, where plaintiff's physician diagnosed plaintiff with fibromyalgia and found her to have "*at least* ten trigger points in her legs and back," and another of her physician's also diagnosed her with fibromyalgia and stated that she had tender points "all over"; ALJ's belief that "the objective evidence conclusively established that plaintiff did not meet the requisite number of trigger points" was "unfounded"); *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94

(W.D.N.Y. 2015) (holding that ALJ erred in finding that plaintiff's fibromyalgia was not a medically determinable impairment, where two physicians diagnosed claimant with fibromyalgia using the recognized test of identifying "trigger points" and those diagnoses were consistent with treatment notes documenting that although fibromyalgia had not yet been diagnosed, claimant was experiencing many typical symptoms of fibromyalgia, including complaints of pain in her back, legs, and upper body; fatigue; and disturbed sleep); *Dillon v. Astrue*, No. CV 09-7272-PLA, 2010 WL 2850910, at *6 (C.D. Cal. July 19, 2010) (holding that, where plaintiff's physicians diagnosed her with fibromyalgia and an examining physician assessed her as having chronic generalized pain consistent with fibromyalgia, ALJ should not have rejected fibromyalgia diagnosis "because [the physicians'] records did not note the number of trigger points they found before reaching their diagnoses"; "in noting that plaintiff had 'multiple' trigger points, [plaintiff's physicians] may have in fact found more than eleven trigger points," and "[i]t was the ALJ's duty to further develop the record if she felt that a specific finding of the number of trigger points was necessary"). Thus, the ALJ's analysis of whether Plaintiff's fibromyalgia was a medically determinable impairment is flawed and not supported by substantial evidence. Because this error potentially impacted each subsequent step of the sequential evaluation, remand is required.

The Commissioner argues, however, that even if the ALJ erred in finding that Plaintiff's fibromyalgia is not a medically determinable impairment, the error is harmless because "the ALJ's analysis continued past step two of the sequential evaluation." (Doc. 9 at 9.) Although the Commissioner is correct that an error at

step two may be harmless if the ALJ identified other severe impairments, proceeded through the remainder of the sequential evaluation, and specifically considered all severe and non-severe impairments during subsequent steps of the process, *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); the ALJ's error in this case stemmed not from a step-two severity conclusion but from the conclusion that Plaintiff's fibromyalgia is not a medically determinable impairment.[5]

This distinction is crucial because, as Plaintiff points out (*see* Doc. 8 at 3), the step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable. One court explained: "Th[e] distinction [between an ALJ's failure to identify an impairment as severe versus as medically determinable] is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations *only if the impairment to which they relate is medically determinable*." *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) (emphasis added) (remanding for ALJ to properly evaluate claimant's fibromyalgia under SSR 12-2p, finding that "ALJ's error . . . stemmed not from a severity conclusion, but from the conclusion that [claimant's] fibromyalgia is not even a medically determinable impairment"). Once an ALJ concludes, as here, that a claimant's fibromyalgia is not

---

[5] As discussed in more detail below, this analysis is not affected by the ALJ's alternative finding that his RFC determination "would be the same" even if Plaintiff's fibromyalgia was found to be a medically determinable impairment, because the impairment did not "more than minimally affect [Plaintiff's] ability to function and [thus] would be non-severe." (AR 466.) The ALJ cannot on the one hand find that Plaintiff's fibromyalgia is not a medically determinable impairment and thus need not be taken into account in determining Plaintiff's RFC, while on the other hand finding that Plaintiff's fibromyalgia *is* medically determinable but non-severe and thus must be considered in determining Plaintiff's RFC. As Plaintiff states in her brief, "[t]o say that an impairment [that] does not exist would not cause greater limitations [to a claimant] is to say nothing at all." (Doc. 8 at 4.)

a medically determinable impairment, there is "no basis [for the ALJ] to credit [the claimant's] statements regarding her fibromyalgia-related symptoms in the remainder of [the] decision." *Id.*; *see Childs v. Colvin*, No. 1:14-CV-00462 (MAT), 2016 WL 1127801, at *3, *4 (W.D.N.Y. Mar. 23, 2016) (holding that, where ALJ determined claimant "did not suffer from [schizoaffective] disorder at all," rather than determining the disorder was non-severe, ALJ failed in his duty to consider the combined impact of plaintiff's medically determinable impairments throughout the disability determination process; and stating, "ALJ's failure to consider plaintiff's schizoaffective disorder at both steps two and three of the sequential evaluation process constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application"); *Casselbury*, 90 F. Supp. 3d at 94 (finding step-two error based on ALJ's rejection of fibromyalgia as a medically determinable impairment was not harmless because, after "discounting [p]laintiff's fibromyalgia as a medically determinable impairment," ALJ "did not consider the potential functional limitations as a result of [p]laintiff's fibromyalgia symptoms"); *Showers v. Colvin*, Civil Action No. 3:13–cv–1147 (GLS/ESH), 2015 WL 1383819, *8 (N.D.N.Y. Mar. 25, 2015) (harmless error doctrine not applicable to determination that impairment was not medically determinable: "[s]ince ALJ . . . found that [claimant's] claimed personality disorder, depression[,] and anxiety were not medically []determinable abnormalities rising to the level of impairments, functional limitations attributable thereto were never considered at subsequent evaluative steps or when formulating [claimant's] [RFC]").

Stated differently, the ALJ's error in finding that Plaintiff's fibromyalgia was not a medically determinable impairment impacted the subsequent steps of the disability determination process because, once the ALJ found the impairment to be not medically determinable, he was not required to consider it in determining Plaintiff's RFC. *See, e.g.*, *Butler v. Colvin*, NO: 1:15-CV-3162-TOR, 2016 WL 8232243, at *5 (E.D. Wash. Aug. 23, 2016) ("[B]y classifying [p]laintiff's fibromyalgia as a non-medically determinable impairment—rather than a severe or non-severe impairment—the ALJ excluded the effects of this condition when formulating [p]laintiff's RFC, rendering the ALJ's RFC finding suspect." (internal quotation marks omitted).) Thus, despite the ALJ's statement that his RFC determination "would be the same" even if Plaintiff's fibromyalgia was found to be a medically determinable impairment because the impairment did not "more than minimally affect [Plaintiff's] ability to function and [thus] would be non-severe" (AR 466), the ALJ's RFC determination likely would have been different had the ALJ considered Plaintiff's fibromyalgia-related symptoms. The ALJ's finding that his RFC determination "would be the same" even if Plaintiff's fibromyalgia was found to be a medically determinable impairment makes little sense because, by finding that fibromyalgia was not a medically determinable impairment from which Plaintiff suffered, the ALJ had no legal basis upon which to find that fibromyalgia was severe or non-severe. *See Toney v. Berryhill*, Civil Action No. 9:17-CV-00080, 2018 WL 4090630, at *4 (D.S.C. Aug. 28, 2018) ("[B]ecause the ALJ concluded that Toney did not have a medically determinable impairment of fibromyalgia, it would have been improper to consider it in the RFC calculation."); *Talbot v. Colvin*, No. 3:13–CV–1249

(GTS), 2015 WL 5512039, *4 (N.D.N.Y. Sept. 15, 2015) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)) ("Only medically determinable impairments may be considered severe or non-severe.").

Additionally, the ALJ's finding that Plaintiff's fibromyalgia was not a medically determinable impairment may have altered his assessment of Plaintiff's credibility. *See Cooper*, 2019 WL 1109573 at *5; *Moore v. Berryhill*, No. CV 17–3933–E, 2018 WL 2106470, at *2 (C.D. Cal. May 7, 2018) ("If the ALJ had found [p]laintiff's alleged fibromyalgia to be a medically determinable impairment, an impairment with which some of [p]laintiff's allegedly disabling symptomology sometimes is associated, the ALJ may have viewed the credibility of [p]laintiff's testimony in a materially different light."); *Strickland v. Berryhill*, No. 7:16-CV-252-FL, 2017 WL 3910436, at *6 (E.D.N.C. Aug. 21, 2017) (stating that "consideration of [c]laimant's fibromyalgia would likely impact the ALJ's credibility determination, because it could account for increased severity of [c]laimant's pain and other symptoms, which the ALJ found were unsupported"); *Allen v. Colvin*, CASE NO. 2:15-CV-01191-TSZ-DWC, 2016 WL 7368128, at *4 (W.D. Wash. Jan. 8, 2016) (noting that if ALJ had considered a diagnosis of fibromyalgia, she "may have found [p]laintiff's testimony regarding her pain, fatigue, and ability to function more credible, which may have impacted the RFC determination"). "Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, e.g., full range of motion, no joint swelling, normal muscle strength[,] and normal neurological reactions." *Campbell v. Colvin*, Civil Action No. 5:13-cv-451 (GLS/ESH),

2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) (emphasis omitted).  These types of "normal" findings are noted in the ALJ's decision, as indications of Plaintiff's ability to function and lack of credibility regarding her allegations about the severity of her fibromyalgia-related symptoms.  (*See, e.g.*, AR 471–73, 476–77.)  Thus, it is likely that some of the ALJ's findings would have been different if Plaintiff's fibromyalgia had been determined to be a medically determinable impairment.

### III.    The Court does not reach Plaintiff's remaining arguments.

As noted above, Plaintiff advances several other arguments in support of her request for remand, including claims that the ALJ erred in his analysis of the medical opinions and determination of Plaintiff's RFC.  In light of the findings discussed above, however, and because the ALJ is required to reconsider the claim starting at step two—this time finding that Plaintiff's fibromyalgia was a medically determinable impairment during the relevant period—the ALJ's credibility assessment, analysis of the medical opinions, RFC determination, and other subsequent steps of the sequential evaluation process will be affected.  Therefore, the Court does not reach these remaining arguments.

### Conclusion

Although the ALJ did not violate the mandate rule or the law of the case doctrine, his exclusion of Plaintiff's fibromyalgia as a medically determinable impairment is not supported by substantial evidence.  The claim is therefore remanded for a reevaluation of Plaintiff's fibromyalgia and reconsideration of each successive step of the sequential disability analysis.  *See Buell v. Berryhill*, 716 F. App'x 600, 602 (9th Cir. 2017) ("If the ALJ had in front of him a valid diagnosis of

fibromyalgia, it stands to reason that Buell's symptoms and behavior would have appeared in a different and more favorable light.").

Accordingly, the Court GRANTS Plaintiff's motion (Doc. 8), in part; DENIES the Commissioner's motion (Doc. 9); and REMANDS for further proceedings and a new decision consistent with this ruling.

Dated at Burlington, in the District of Vermont, this 10th day of October 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge